## Case No. 1,672.

### The BOSTON.

[Olc. 407.] [1]

District Court, S. D. New York. July Term, 1846.

COLLISION—COMPETING PASSENGER STEAMBOATS—ATTEMPTS TO PASS—COSTS—VINDICTIVE ARREST.

1. In a collision betwen two passenger steamboats, occurring at their place of departure, both starting from the same slip or pier at the same time, they will be mutually held responsible for the exercise of the utmost prudence and precaution.

2. Neither can lawfully press ahead of the other in getting under way, when it is apparent their movements are commenced simultaneously.

3. If they are competitor boats, running the same route, negligence or fault in producing the collision will be imputed equally to each, unless one clearly exculpates herself.

4. The law of this state imposes a penalty on a steamboat for attempting to pass another under way nearer than twenty yards, and the maritime law subjects them to all damages caused by crowding on vessels under way to pass them, or in crossing their bows.
[Cited in The Greenpoint, 31 Fed. 231.]

5. This court will not allow costs on the arrest of a vessel for a small cause of action, when the party has adequate remedy in the lower municipal courts, and especially if the suit is prosecuted vindictively, and with a view to create costs.
[Cited in The David Morris, Case No. 3,596.]

[6. It is want of due prudence and precaution to attempt to run a boat across the track another is known to be intending instantly to take.]

In admiralty. The steamers Frank and Boston, two small passenger boats belonging to this port, lay at or near the same wharf, in this harbor, and were in the act of going out together, their trips being appointed for the same hour. They were competitor boats, making frequent trips daily from Canal-street slip to landing places a few miles up the Hudson river, on the New-Jersey shore. There was great acrimony and vindictiveness of feeling subsisting between the officers of the two boats. In a struggle between the two to have the lead in getting under way on an up trip, they came in collision. The libellant's boat, the Frank, received injuries, which were repaired at the cost of $21.27. This action was brought for the injuries, demanding large damages. [Decree for libellant.]

Geo. W. Stevens, for libellant.
W. Q. Morton, for respondents.

BETTS, District Judge. This case is quite unimportant in a pecuniary point of view. It has, however, been contested with great earnestness, by proofs and arguments on the allegations that interests, important to this class of business conducted by numerous steam craft into and from this harbor, are involved in the controversy. The principal points in litigation are: 1. The relative rights and duties of such steamers in getting under way from their berths, when the hour of their starting is known to each to be the same. 2. Whether the injury in this instance was caused by the fault or negligence of the Frank or Boston, or neither or both. 3. Whether, if blame be imputable to the Boston, the libellant might not, with reasonable care and skill, have avoided the collision, and is not chargeable with fault in omitting to do so. 4. Whether the loss shall not be apportioned between the two vessels, because of the difficulty on the evidence in determining which one was most in the wrong. The zeal of the litigant parties has been so far partaken of by the counsel as to call forth a labored discussion of every fact, and numerous authorities supposed to have a bearing

[1] [Reported by Edward R. Olcott, Esq.]

upon the case. I do not, however, regard it as one which demands of the court an extended exposition of its views upon the subjects debated. The doctrines which obtain in admiralty in collision cases are sufficiently collected, with the authorities supporting them, in the late edition of Abbott on Shipping, just published (part 3, c. 1), and it will be needless to collate and expound the cases applicable to the merits of this issue, there being entire harmony in the general principles affecting this case, with perhaps the exception of the point whether the court can order an apportionment of damages between the two vessels if unable to decide which one was most blameable for the injury sustained. That point will not come within the purview of the present decision.

It is not easy, upon the evidence, to determine which of the two boats, when the hour for starting arrived, first moved its wheels ahead. Both had their engines in action for a considerable time previously, as is the usage in preparing to get under way at a fixed time, working their wheels alternately a turn or two backwards and forwards, to get the positions from which they intended to start on the trip. The witnesses on each boat, who were taking notice of the proceedings, think the boat they were upon began turning its wheels ahead, whilst the wheels of the other one were backing or standing still. Giving credit to them on both sides, the difference is so trivial, that it may be assumed that the two attempted to go forward simultaneously. A person standing on deck might thus, by his sensations from the leverage of the wheels against the water, be conscious that his boat was in the act of getting in motion before one, observing her a short distance off, could discern that her wheels had commenced revolving; or if so, which way they were turning. I do not think that particular of essential importance. The Frank had been lying up beside her wharf slip, with her head towards the shore. She cast off her fastenings and backed out of the slip past the Boston, the latter lying at the end of a pier, with her head down the river. It was perfectly known on board the Boston that the movement by the Frank was for the purpose of getting a position outside the piers for starting on her course up the river. It had been usual for her to start in that manner. So soon as the Frank left her berth, and had cleared the Boston, the latter loosened her fastenings at the end of the pier, and backed into the slip the Frank had left. The direction of the boats towards each other, then, was at right angles, the Boston heading westerly and the Frank northerly, that being the course each was to start upon. Witnesses differ widely in their estimates as to the distance the Frank was from the Boston when the latter commenced moving ahead; some say from one hundred to one hundred and fifty yards, and two pilots, not belonging to either boat, calculated they were sixty or one hundred feet apart when the Boston pushed out of her slip, the stern of the Frank then being about even with the end of the pier to the slip out of which the Boston was moving. In this state of facts it is incumbent on the Boston to prove, beyond all reasonable doubt, that when put in motion to cross the Frank's bows, the latter boat was either backing off in another direction or her wheels were still, so that there would be no hazard of striking her, otherwise she must be responsible for running out when the slightest mistake as to the distance or action of the Frank would almost inevitably cause a collision. But without laying stress on the want of such evidence, I regard the Boston clearly in fault for attempting to pass out of her slip whilst the other boat was manoeuvering in such close proximity to get on her course, and might, in an instant, be under full way on it, and when a false move could hardly fail to bring the two boats against each other. Under any circumstances, it would be deemed a want of due prudence and precaution to attempt to run a boat across the track another was known to be intending instantly to take, although not made certain at the time that she had actually made progress in it; and the blame that would be incurred in ordinary cases for an attempt so hazardous becomes more positive when there is manifestly a keen rivalry between the boats, each struggling to get the lead of the other. The boat first under motion in such cases ought not to be interfered with; and the one delayed in starting should be held to the exercise of every possible caution in following the movement of the other. The competition for the first starting or the earliest arrival might otherwise absorb all considerations for the safety of the vessel or passengers, and put both in imminent peril.

The law of this state prohibits, under a penalty of $250, one steamboat approaching another under way, with intent to pass her, within less than twenty yards (1 Rev. St. 682), and the general principles of maritime law exact in the navigation of vessels, on all occasions, great prudence in attempting to pass each other, or cross the known direction either is taking. I think the evidence it at least equally strong to show that the Frank was moving ahead when the Boston started, as that the wheels of the latter began first to move forward; but which ever way that fact might be, it must have been palpable to the master and pilot of the Boston that they run a bold risk in attempting to pass the bows of the Frank at the moment she must, in her state of preparation, be ready to move forward. They should, in the exercise of the most ordinary precaution, have stopped until that danger was past. The duty of using special caution is cast upon her because she came out of her berth after the other boat was under way,

and so near to her, that if the latter continued her course up the river, the Boston could not probably, by any movement in her power, avoid coming in collision. The attempt, then, to take the lead, was manifestly hazardous; and as it was made deliberately by the Boston, and not two minutes could have been lost to her had she waited till all danger was past, she is justly responsible for the damages occasioned by her precipitancy and want of circumspection. I shall accordingly decree that she be condemned to pay the expenses of the reparation of the Frank, found to be $21.23; but I shall not decree costs to the libellant.

No necessity has been shown in the case, which might have been tried by any magistrate, for instituting an action in rem, and creating the heavy expenses attendant upon attaching the Boston, and conducting the proceedings through this tribunal. It is the habit of the English admiralty in salvage and collision cases, where a recovery is had by a libellant, to deny him costs, if there be any thing unreasonable or oppressive in his proceedings. The Moslem [Case No. 9,876]. I should have gone further and awarded costs to the claimants, had they, after the disaster, tendered all reasonable amends to the Frank. There is too much reason to apprehend, from declarations given in evidence, that both parties have been actuated throughout the proceedings by hostile if not vindictive feelings towards each other. If the libellant is not justly obnoxious to that charge in respect to the action of his boat, he availed himself of the scintilla of right in his favor to urge her ahead, and compel the other to give way to him when a moderate degree of forbearance might have avoided the collision. It is the duty of the court to guard watchfully against encouraging the exaction of rigorous advantages in favor of any party in the navigation of steamboats about the harbor. Life and property may be exposed to serious perils from the temerity or obstinacy of steamboat masters or pilots who may be willing to push a privilege to the most dangerous extremities, if assured they may have the countenance of the law in their recklessness. Although, then, the judgment of the court is, (1.) That it was the right of the Frank, on the occasion, to hold her way, and the duty of the Boston to have stopped hers; (2.) That the blame belongs to the Boston for not keeping out of the course of the Frank, and that she is liable for the whole actual damage caused by her failing to do so, with no equity to an apportionment of damages between herself and the Frank, there being no common fault between them other than their mutual jealousy and ill-temper towards each other; yet, because of the needless resort to the processes of this court by the libellant, I shall award him his outlay for repairs alone, and leave each party to pay his own costs of suit. Decree for libellant for $21.23.